UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DUANE HAYWARD, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:14-cv-2282 |
| | ) Judge Trauger |
| v. | ) |
| | ) |
| TRINITY CHRISTIAN CENTER OF | ) |
| SANTA ANA,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the court is a Motion to Dismiss or, Alternatively, to Transfer (Docket No. 7) filed by the defendant, Trinity Christian Center of Santa Ana ("Trinity"). The plaintiff has filed a Response in opposition (Docket No. 10) to the defendant's Motion, to which the defendant has filed a Reply (Docket No. 15), and the plaintiff has filed a Sur-Reply with the court's permission (Docket No. 18). For the reasons stated herein, the court will order the parties to submit supplemental briefing related to the enforceability of the arbitration agreement.

## BACKGROUND

I. **Allegations of the Plaintiff's Complaint**

On November 20, 2014, the plaintiff, Duane Hayward, filed this action against Trinity, his former employer. Trinity is a church and California religious non-profit corporation that does business in Tennessee as Trinity Broadcasting Network. In his Complaint, Hayward alleges that, between 2006 and 2008, he worked at Trinity as a production technician and, beginning in January 2008, as a facilities supervisor. Upon his promotion to facilities supervisor, Hayward

---

[1] It appears from the defendant's brief that, in the plaintiff's initial filings, the defendant's name was misspelled. The correct spelling appears to be "Trinity Christian Center of Santa Ana." The court will use the correct spelling in this Memorandum and, going forward, requests that the parties do the same.

1

and Trinity executed a Comprehensive Arbitration Agreement (the "Agreement"). (Docket No. 9, Ex. 1.) The Agreement states, in relevant part:

> I [Hayward] agree and acknowledge that the Company and I will utilize binding arbitration to resolve all disputes that may arise out of the employment context. Both the Company and I agree that any claim, dispute, and/or controversy that I may have . . . *shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act under the jurisdiction of the County of Orange in the state of California, also in conformity with the procedures of the California Arbitration Act (Cal. Code. Civ. Proc. Sec. 1280 et seq., including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery).*

(*Id.* (emphasis added).) The Agreement sets forth additional terms for arbitration, including that (1) the arbitrator selected shall be a retired California Superior Court Judge, or otherwise qualified individual to whom the parties mutually agree; (2) the parties should adhere to the rules of procedure set forth by the California Code of Civil Procedure; and (3) the Agreement should not prevent the plaintiff from filing proceedings before California's Department of Fair Employment or Housing or the United States Equal Employment Opportunity Commission.

Hayward signed the Agreement on February 12, 2008. In an affidavit submitted in support of his opposition to the pending motion, Hayward states that he does not recall signing the Agreement, but he presumes that it was one of many documents that he was required to sign as a condition of his employment when he was converted from part-time status to a full-time role as facilities manager. (Docket No. 12.) Hayward further states that he signed the agreement the same day it was given to him and that he was not given an opportunity to consider the agreement or to consult with an attorney prior to signing it. (*Id.*)

According to the Complaint, as the facilities supervisor of Trinity's Hendersonville location, Hayward was responsible for general maintenance of about 15 buildings situated on 37 acres of land, including landscaping and electrical work. Hayward alleges that, between his promotion to facilities manager in 2008 and December 2013, he was classified as an exempt

2

employee and, therefore, he did not receive overtime pay for hours that he worked in excess of 40 hours per week. Hayward alleges further that, during this period, he regularly worked over 40 hours a week, typically working an average of 50 hours per week. Hayward alleges that, in 2013, he began to inquire whether he was properly classified as an exempt employee. Hayward further alleges that, in December 2013, Trinity voluntarily reclassified him as a non-exempt employee and began paying him on an hourly basis. Trinity terminated Hayward in August 2014.

## II.     This Action

Hayward filed this action on November 20, 2014, alleging that Trinity failed to properly compensate him for his overtime pay during the period that he was classified as an exempt employee. Hayward's Complaint alleges that Trinity was aware of Hayward's misclassification and, therefore, willfully violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), by failing to properly compensate him.

Trinity filed the pending motion on December 16, 2014. Specifically, the defendant argues that this action should be dismissed because the Agreement requires that the plaintiff's claims be arbitrated in Orange County, California.

## ANALYSIS

## I.     The Federal Arbitration Act

The Federal Arbitration Act ("FAA") was enacted to overcome courts' reluctance to enforce arbitration agreements. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995); *see also Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (2004) ("Congress enacted the Federal Arbitration Act . . . 'to place arbitration agreements upon the same footing as other contracts.'"). Section 2 of the FAA states: "[a] written provision in any maritime transaction or

contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" 9 U.S.C. § 2 (emphasis added).

"As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 652-53 (6th Cir. 2003) (*en banc*). Nevertheless, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 500 U.S. at 6. Accordingly, an agreement to arbitrate is valid "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 90 (2000) (citing *Gilmer*, 500 U.S. at 28). However, even if an arbitration provision is unenforceable, it is well settled that the unenforceable provision should be severed in favor of arbitration, unless the provision taints the entire agreement. *Morrison*, 317 F. 3d at 675.

As the Sixth Circuit has noted, the Supreme Court has endorsed arbitration in the employment law context, including claims asserted under statutes like the FLSA. *Cooper*, 367 F.3d at 498-99 (citing *Circuit City Stores v. Adams*, 532 U.S. 105, 122-23 (2001)). "The Supreme Court has emphasized that 'federal statutory claims may be the subject of arbitration agreements . . . enforceable pursuant to the FAA because the agreement only determines the choice of forum.'" *Morrison*, 317 F.3d at 653 (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 295 n.10 (2002)).

II.     **Assessing Enforceability of Arbitration Agreements, Generally**

"Because the FAA is 'at bottom a policy guaranteeing the enforcement of private contractual arrangements,'" courts must first look to whether the parties agreed to arbitrate a dispute to determine the scope of the agreement. *Waffle House*, 534 U.S. at 294 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985)). "It is well settled in both commercial and labor cases that whether parties have agreed to 'submit a particular dispute to arbitration' is typically an 'issue for judicial determination.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (additional citations omitted)). "It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co.*, 561 U.S. at 296.

The Supreme Court has instructed that, in determining the enforceability of arbitration agreements, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 983, 944 (1995). "Thus, generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper*, 367 F.3d at 498 (citing *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996)). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." *Id.* (internal citations omitted). Nevertheless, "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, [courts] do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. Arbitration under the FAA is a matter of consent, not coercion." *Waffle House*, 534 U.S. at 294.

The Agreement between Hayward and Trinity was executed in Tennessee and, therefore, Tennessee state law principles and contract defenses are relevant to the consideration of whether or not the Agreement is enforceable. The Sixth Circuit and federal courts have routinely held arbitration agreements invalid in circumstances where the agreements lack consideration, mutuality of obligation, or where the record demonstrates that employees did not knowingly and voluntarily waive their constitutional right to trial. *See, e.g.*, *Walker v. Ryan's Family Steak House*, 289 F. Supp.2d 916, 936 (M.D. Tenn. 2003); *aff'd*, 400 F.3d 370, 381 (6th Cir. 2005), *cert. denied*, 546 U.S. 1030 (2005); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000).

### III.  The Plaintiff's Opposition to the Motion to Dismiss

In relevant part, the Agreement states that any claim by Hayward "shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act under the jurisdiction of the County of Orange in the state of California, and also in conformity with the procedures of the California Arbitration Act."

The issue briefed by the parties with respect to the defendant's motion is fairly simple: is the arbitration agreement between the parties unenforceable because it is cost-prohibitive to the plaintiff? The plaintiff challenges the Agreement only on the ground that the arbitration agreement is cost-prohibitive because it requires Hayward and the defendant to split the fees of arbitration equally. Because of his financial circumstances and the significant costs associated with arbitration in California, Hayward contends that the Agreement is cost-prohibitive and would have the effect of deterring him and similarly situated individuals from seeking to

vindicate their federal statutory rights. Consequently, the plaintiff argues, the court should hold that the agreement is unenforceable and deny the defendant's motion.[2]

Conversely, the defendant argues that, according to a judicial exception created by the California Supreme Court, the defendant will be responsible for the bulk of fees unique to arbitration and, therefore, the agreement should not be deemed unenforceable on the ground of cost-prohibition. The briefs submitted by the parties are limited to this narrow issue of whether or not the agreement is cost-prohibitive to the plaintiff and, specifically, what provision of California law defines the obligation that each party has to pay the costs of the arbitration.

The plaintiff's argument presents two questions to the court: (1) what cost-splitting provision applies to the Agreement, if any, and (2) whether the agreement is enforceable. Before reaching these inquiries, the court must determine whether the parties agreed to arbitrate a dispute—*i.e.*, whether a valid contract was formed. *Waffle House*, 534 U.S. at 294.

## IV. Whether Hayward and Trinity Agreed to Arbitrate Employment Disputes

### A. Mutual Promises under Tennessee Law

#### 1. Elements of Formation

One of the essential elements of a contract is adequate consideration, which Tennessee law defines as "either a benefit to the maker of a promise or a detriment to or obligation on the promise" or "when the promise does something that he is under no obligation to do, or refrains from doing [that] which he has a legal right to do." *Calabro v. Calabro*, 15 S.W.3d 873, 876, 77 (Tenn. Ct. App. 1999) (quoting *Univ. of Chattanooga v. Stansberry*, 9 Tenn. App. 341, 343 (Tenn. Ct. App. 1928) and *Kozy v. Werle*, 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995))

---

[2] The court notes that the plaintiff, in his opposition brief, did not address the principle of severability. *Morrison*, 317 F.3d at 653. Consequently, neither party suggested how the court should rule if it finds only the cost-splitting provision of the Agreement to be unenforceable.

(alterations in original). Mutual promises may constitute ample consideration for a contract, especially in the context of services contracts. *See Buraczynski v. Eyring*, 919 S.W.2d 314, 321 n.6 (Tenn. 1996); *Rodgers v. Southern Newspapers, Inc.*, 379 S.W.2d 797, 800 (1964). Mutual promises to be bound under an arbitration agreement can constitute adequate consideration. *See Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 358 (Tenn. Ct. App. 2001).

Nonetheless, "a promise constitutes consideration for another promise only when it creates a binding obligation. Thus, absent a mutuality of obligation, a contract based on reciprocal promises lacks consideration." *Floss*, 211 F.3d at 315-16. "In other words, a promise is legally enforceable only if the promisor receives in exchange for that promise some act or forbearance, or the promise thereof." *Id.* (internal citations omitted). One way in which a promise may fail to create a legally binding obligation is by being illusory—essentially promising nothing at all, or allowing the promisor to decide whether or not to perform the promised act. *Id.* "A promise is also illusory when its indefinite nature defies legal enforcement." *Id.*

A court reviewing a contract must also be able to ascertain what obligations the respective parties have in the performance of the contract, and the contract must be sufficiently definite and certain to allow the court to make such a determination. *See id.*; *Jamestown on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 565 (Tenn. Ct. App. 1990); *see also Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991).

    2. <u>Obligations of Hayward and Trinity under the Agreement</u>

Here, the Agreement contains several California-specific provisions. First, the contract notes that claims should be "submitted to and determined exclusively by binding arbitration . . .

under the jurisdiction of the County of Orange in the state of California." Second, the contract specifically identifies certain remedies that the employee retains under California law, including the right to file and pursue proceedings before the California Department of Fair Employment and Housing. Third, the Agreement identifies a variety of other California rules that may apply to any disputes among the parties, including rules of pleading, evidence, and judgment governed by California's Code of Civil Procedure. Finally, the Agreement defines its scope by referencing a variety of California statutory claims, including claims arising under the California Workers' Compensation Act, Employment Development Department, and the California Fair Employment and Housing Act.[3]

Here, the employee, Hayward, is a Tennessee resident who signed the Agreement in Tennessee at his employer's Tennessee facility—the only Trinity facility at which he ever worked. Based upon these facts, Hayward presumably has no rights under California law. The court has no reason to believe that he could invoke the statutory protection of the California Workers' Compensation Act, file claims with the California Employment Development Department claims, or initiate proceedings with the California Department of Fair Employment and Housing. A substantial portion of the Agreement appears to be inapplicable to Hayward.

The court is also concerned regarding the Agreement's terms as to where an arbitration would take place. The defendant assumes that the Agreement requires that the parties arbitrate in Orange County, California. However, the Agreement merely states that "any claim . . . shall be submitted to and determined exclusively by binding arbitration . . . under the jurisdiction" of Orange County, California. Although there is, in fact, a Superior Court of California located in

---

[3] Notably, the Agreement makes no mention of Tennessee or any other state.

Orange County, California, it is unclear to the court how an arbitration falls "under the jurisdiction" of a state trial court.

Upon review of the contract's terms for the purpose of determining the parties' obligations, the court concludes that the Agreement appears to be written for individuals working for Trinity in California—not in Tennessee. Consequently, the court has concern regarding whether the Agreement's terms are sufficiently definite and certain so as to require the parties to arbitrate this dispute. This concern is heightened by Hayward's sworn affidavit, which suggests that Hayward does not recall signing the Agreement, does not recall considering the Agreement, and did not have a chance to carefully review the Agreement by himself or with counsel before signing. For this reason, the court will request additional briefs from the parties related to whether the Agreement's terms reflect an agreement to arbitrate.

### B. Enforceability of an Adhesion Contract

#### 1. Adhesion Contracts, Generally

In addition to the Agreement's terms, the court is similarly troubled by the circumstances of the Agreement's formation. Under Tennessee law, an adhesion contract is a standardized form offered on what amounts to a "take it or leave it" basis, without affording the weaker party a realistic opportunity to bargain, and under conditions whereby the weaker party can only obtain the desired product, service, or employment by submitting to the form of the contract. *Buraczynski*, 919 S.W.2d at 320. According to the affidavit submitted by Mr. Hayward, he does not recall signing the Agreement, but "presume[s] it was one of those many, many documents that he was required to sign as a condition of his employment." (Docket No. 12.) Moreover, given the inclusion of California-specific terms that have no applicability to Hayward (or for that matter, any employee outside of California), it may be that the contract is a standardized form

given to *all* Trinity employees. Finally, Hayward's affidavit suggests that, if he did not sign the agreement, he would not have been considered for employment.

        2. Unconscionability

Adhesion contracts are only unenforceable in Tennessee when the terms are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable. *Buraczynski*, 919 S.W.2d at 320; *see also Pyburn*, 63 S.W.3d at 359. Under Tennessee law, a contract is unconscionable when "the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984). Courts draw a distinction between procedural unconscionability, which contemplates a lack of meaningful choice on the part of one party, and substantive unconscionability, which contemplates contract terms that are unreasonably harsh. *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001). The Tennessee Court of Appeals directed courts undertaking an unconscionability inquiry to consider all of the facts and circumstances of a particular case and find a contract unconscionable when its provisions are "so one-sided that the contracting party is denied any opportunity for a meaningful choice." *Haun*, 690 S.W.2d at 872. Such circumstances to be considered include the method by which the employer presented the employee with the agreement, additional oral instructions or context with respect to the agreement given by the employer to the employee (if any), and the amount of clarity that the agreement provides to the employee as to the exact effects of his signature thereto.

3. <u>Knowing and Voluntary Waiver</u>

The question of waiver of the right to a jury trial is governed by federal, not state, law. *See Walker*, 289 F. Supp.2d at 936. The Sixth Circuit has instructed that, to evaluate whether a plaintiff has knowingly and voluntarily waived his or her right to pursue employment claims in federal court, the following factors must be evaluated (1) the plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances. *Morrison*, 317 F.3d at 668; *see also Walker*, 400 F.3d at 381.

The Agreement, on its face, does not appear to explain or indicate that the parties are giving up the right to vindicate their statutory rights in state or federal court. Unlike arbitration agreements that have been routinely enforced by federal and state courts in Tennessee, the Agreement here does not emphasize with bolded letters, italics, or capital letters, that by signing the contract, Hayward was consenting to waive his right to a trial by jury. *See, e.g.*, *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 880 (Tenn. 2007). In light of the unclear language of the agreement, its failure to emphasize its effects, and Hayward's sworn statement indicating that he was not given time to consider the Agreement and did not remember signing it, the court is troubled that Hayward's waiver of his constitutional right to a jury trial may not have been knowing and voluntary. *See Walker*, 289 F. Supp.2d at 936; 400 F.3d at 381.

The court will ask the parties to address Hayward's waiver of his right to jury trial and, in particular, whether the waiver was knowing and voluntary as a matter of law.

4. Mutual Assent

Courts routinely hold unenforceable arbitration agreements that do not result from a meeting of the minds in mutual assent. "It is well-settled under Tennessee law that a contract must result from a meeting of the minds of the parties in mutual assent to the terms." *Walker*, 400 F.3d at 383. "Although the question of mutual assent involves largely an objective analysis, the parties' intent remains relevant, in particular the circumstances surrounding the formation of the contract." *Id.* (additional citations omitted). Tennessee courts have generally said that parties who do not read the contracts they sign cannot be heard to complain about the contracts' contents; they may not deny their obligations under those contracts and will be presumed by the court to know their contents. *Pyburn*, 63 S.W.3d at 359. Despite this general rule, however, courts have, at times, refused to hold parties to contracts that they have not read. *See Howell v. NHC Healthcare-Fort Sanders, Inc.*, 109 S.W.3d 731, 735 (Tenn. Ct. App. 2003) (holding that plaintiff was not bound by arbitration agreement that nursing home employee "pushed" in front of him without explanation that he was waiving a right to a jury trial if a claim was brought against the nursing home).

5. Parties' Agreement

Here, the court is concerned that the Agreement is procedurally unconscionable. As an initial matter, Hayward's affidavit indicates that he was not given the opportunity to modify any portion of the Agreement, to consider the Agreement for any length of time, or to consult with an attorney before signing it. It is similarly unclear whether Hayward was given a copy of the Agreement after signing it. Moreover, the court has concerns that, as in *Walker*, Hayward did

not knowingly and voluntarily execute the Agreement and that the Agreement did not result from a meeting of the minds in mutual assent.

## **CONCLUSION**

For these reasons, the court will order the parties to submit supplemental briefs with respect to the issues raised in this Memorandum within 20 days of the date of the accompanying Order.

An appropriate order will enter.

 _____
 ALETA A. TRAUGER
 United States District Judge