UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DUANE HAYWARD,** ) | |
| ) | |
| Plaintiff, ) | Case No. 3:14-cv-2282 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| **TRINITY CHRISTIAN CENTER OF** ) | |
| **SANTA ANA,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

The parties have now completed court-ordered supplemental briefing (Docket Nos. 22-26) related to the defendant's pending Motion to Dismiss or, Alternatively, to Transfer (Docket No. 7). For the reasons discussed herein, the motion will be denied.

## BACKGROUND

The background of this action is described in the court's March 24, 2015 Memorandum (Docket No. 20), familiarity with which is assumed. For context, the court will briefly describe the events underlying the plaintiff's claims and the procedural posture of the case.

### I. Allegations of the Plaintiff's Complaint

The plaintiff, Duane Hayward, filed this action against his former employer, Trinity Christian Center of Santa Ana ("Trinity"), on November 20, 2014. Hayward worked for Trinity, a church and religious non-profit corporation, between 2006 and August 2014 at Trinity's facility in Hendersonville, Tennessee. In January 2008, Hayward was promoted from a part-time position to a full-time role as a facilities supervisor. Upon his promotion, Hayward and Trinity

1

executed a Comprehensive Arbitration Agreement (the "Agreement"). (Docket No. 9, Ex. 1.) The relevant portion of the Agreement states:

> I [Hayward] agree and acknowledge that the Company and I will utilize binding arbitration to resolve all disputes that may arise out of the employment context.

(*Id.* (emphasis added).)

Hayward alleges that, between his promotion to facilities manager in 2008 and December 2013, he was classified as an exempt employee and, therefore, he did not receive overtime pay for hours that he worked in excess of 40 hours per week. Hayward alleges further that, during this period, he regularly worked over 40 hours per week, typically working an average of 50 hours per week. Hayward alleges that, in 2013, he began to inquire whether he was properly classified as an exempt employee. Hayward further alleges that, in December 2013, Trinity voluntarily reclassified him as a non-exempt employee and began paying him on an hourly basis. Trinity terminated Hayward in August 2014.

## II. **Procedural Background**

Hayward filed this action on November 20, 2014, alleging that Trinity failed to properly compensate him for his overtime pay during the period that he was classified as an exempt employee. Hayward's Complaint alleges that Trinity was aware of Hayward's misclassification and, therefore, willfully violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), by failing to properly compensate him.

Trinity filed the pending motion on December 16, 2014. Specifically, the defendant argues that this action should be dismissed because the Agreement requires that the plaintiff's claims be arbitrated in Orange County, California. The plaintiff opposed the motion, arguing that the arbitration agreement is cost-prohibitive.

Upon review of the Agreement, the court ordered the parties to submit supplemental briefs with respect to a threshold inquiry: whether the parties agreed to arbitrate a dispute—*i.e.*, whether a valid contract was formed and the scope of that agreement. The parties filed their supplemental briefs on April 13, 2015. (Docket Nos. 22, 24.)

### III.   The Parties' Supplemental Briefs

The plaintiff asserts that the Agreement is unenforceable because (1) it lacks the mutuality and definiteness necessary to be a valid contract; and (2) the contract is procedurally unconscionable because it is an adhesion contract. In support of his supplemental brief, the plaintiff also submits his own affidavit. In the supplemental affidavit, Hayward states that he does not recall signing the Agreement, but he presumes that it was "one of those many, many documents" that he was required to sign as a condition of his continued employment. (Docket No. 23.) Hayward further states that (1) there were multiple documents in the stack of employment paperwork given to him when he was promoted; (2) he does not recall who gave the paperwork to him, but he remembers being told that he could not begin work until he signed the paperwork; (3) no one explained to him anything about the Agreement; (4) no one advised him to consult with an attorney; (5) he signed the documents the same day that he received them; and (6) no one provided him with a copy of the paperwork that he signed. (*Id.*) Hayward further states that he "do[es] not believe [he] understood [the Agreement] to impose any costs of arbitration on [him]." (*Id.*) Hayward states that, if he had understood that he would be responsible for a *pro rata* share of arbitration costs, or even travel expenses, to pursue his employment rights, he does not know if he would have signed the Agreement. Hayward further states that he did not understand the Agreement to impose arbitration costs on him, and he did not understand that he was waiving his right to a jury trial when he read the Agreement. (*Id.*)

3

In response to the concerns raised by the court in its March 24, 2015 Memorandum, the defendant contends that the Agreement—and all of its terms—are enforceable because (1) the plaintiff does not dispute that he signed the agreement; (2) the Agreement contains a bolded stand-alone paragraph explaining the mutual waiver of right to trial by jury, which cannot be considered hidden or oppressive; (3) the plaintiff did not lack in education or experience such that he could not understand the Agreement; and (4) the Agreement's terms, which focus primarily on California law, also reference "any other state or federal law," and therefore apply to the plaintiff.

## ANALYSIS

### I. The FAA and Severability of Arbitration Agreements

The parties agree that the Agreement is governed by the Federal Arbitration Act ("FAA"), which was enacted to overcome courts' reluctance to enforce arbitration agreements. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995); *see also Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (2004) ("Congress enacted the Federal Arbitration Act . . . 'to place arbitration agreements upon the same footing as other contracts.'"). Section 2 of the FAA states: "[a] written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." 9 U.S.C. § 2 (emphasis added).

Under the FAA, a court undertakes four inquiries when reviewing an arbitration provision: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of the agreement; (3) if federal statutory claims are asserted, determine whether Congress intended them to be non-arbitrable; and (4) if some, but not all, of the claims are subject to arbitration,

4

determine whether to stay the remainder of the proceedings pending arbitration. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). Here, the parties appear to disagree about the first two inquiries—*i.e.*, whether the parties agreed to arbitrate and the scope of the agreement.

As the court noted in its March 24, 2015 Memorandum, the court has concerns regarding whether the Agreement executed by the parties—in part or in sum—is enforceable.

> The Agreement between Hayward and Trinity was executed in Tennessee and, therefore, Tennessee state law principles and contract defenses are relevant to the consideration of whether or not the Agreement is enforceable. The Sixth Circuit and federal courts have routinely held arbitration agreements invalid in circumstances where the agreements lack consideration, mutuality of obligation, or where the record demonstrates that employees did not knowingly and voluntarily waive their constitutional right to trial. *See, e.g.*, *Walker v. Ryan's Family Steak House*, 289 F. Supp.2d 916, 936 (M.D. Tenn. 2003); *aff'd*, 400 F.3d 370, 381 (6th Cir. 2005), *cert. denied*, 546 U.S. 1030 (2005); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000).

(Docket No. 20.) Upon review of the parties' court-ordered briefs, the court concludes that the parties' Agreement constitutes an agreement to arbitrate, but that one paragraph of the Agreement is unenforceable and must be severed.

## II. The Parties' Agreement

### A. The Majority of the Second Paragraph of the Agreement Is Unenforceable

Under Tennessee law, to find a contract enforceable, courts reviewing a contract must be able to ascertain what obligations the respective parties have in the performance of the contract, and the contract must be sufficiently definite and certain to allow the court to make such a determination. *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000); *Jamestown on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 565 (Tenn. Ct. App. 1990); *see also Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553

(Tenn. Ct. App. 1991). Upon careful review of the parties' supplemental briefs, the Agreement, and the record, the court concludes that the majority of the second paragraph of the Agreement is unenforceable because it is not sufficiently definite and certain so as to set forth the obligations of the parties.

The second paragraph of the Agreement begins with the sentence, "I [Hayward] agree and acknowledge that the Company and I will utilize binding arbitration to resolve all disputes that may arise out of the employment context." This sentence is a "mutual promise," which constitutes adequate consideration, and is straightforward and clear. Consequently, the court considers this promise to be sufficiently mutual and definite to be enforceable.

The remainder of the second paragraph ("Remainder"), however, is difficult to follow, confusing, and appears to be inapplicable to Hayward. For instance, the second (and most egregious) sentence of the second paragraph states:

> Both the Company and I agree that any claim, dispute, and/or controversy that either I may have against the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) or the Company may have against me, arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act under the jurisdiction of the County of Orange in the state of California, also in conformity with the procedures of the California Arbitration Act (Cal. Code. Civ. Proc. Sec. 1280 et seq., including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery).

(Docket No. 9, Ex. 1.) The defendant asserts that this sentence mandates that any binding arbitration between the parties take place in Orange County, CA. The court disagrees. From its plain language, the court cannot discern what obligations the parties have with respect to the performance of the Agreement. Moreover, contrary to the defendant's assertions, the court is unconvinced that the clause "under the jurisdiction of the County of Orange in the state of

6

California" constitutes a venue provision identifying Orange County, California, as the locus for any arbitration. The court further is unpersuaded that Hayward, despite his three years of college education, understood the alleged "venue clause" to indicate that he would be obligated to arbitrate claims against Trinity in California. (*See* Docket Nos. 22, 23.)

The Remainder also inexplicably contains several California-specific provisions, including certain remedies that the employee retains under California law, including the right to file and pursue proceedings before the California Department of Fair Employment and Housing and a variety of California statutory claims, including claims arising under the California Workers' Compensation Act, Employment Development Department, and the California Fair Employment and Housing Act. Based upon the facts before the court, Hayward presumably has no rights under California law. Moreover, even if the court were to conclude that the California-specific provisions were enforceable, the court is unable to determine how these provisions obligate the parties to perform.[1]

Hayward's sworn affidavit further supports a finding that the Agreement's terms are not sufficiently certain and definite so as to require the parties to arbitrate this dispute in California. Hayward states that he does not recall signing the Agreement, that he did not understand it to impose any costs of arbitration or travel expenses on him, and that he received no explanation or further information from Trinity regarding the Agreement beyond the confusing language on the one-page Agreement.

---

[1] The court is unpersuaded by the defendant's argument that, because the second paragraph contains two "catch-all" provisions using the phrase "any other federal and state law" in its definition of "all disputes," the California-specific provisions of the paragraph contemplate and apply to employees working solely outside of California.

The court has struggled to discern the terms set forth in the language of the Remainder. Accordingly, the court concludes that the Remainder is unenforceable because it lacks definiteness.

### B. Severability

It is well settled that, even if an arbitration provision is unenforceable, the unenforceable provision should be severed in favor of arbitration, unless the provision taints the entire agreement. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 652-53, 675 (6th Cir. 2003) (*en banc*).[2] The Supreme Court has instructed that, when analyzing arbitration agreements, courts should "resolve any doubts as to arbitrability 'in favor of arbitration.'" *Morrison*, 317 F.3d at 675 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Upon review of the remainder of the Agreement, the court concludes that only the Remainder is unenforceable and, therefore, it will sever the Remainder.

### C. The Third, Fourth, and Fifth Paragraphs of the Agreement Are Enforceable

The third paragraph of the Agreement includes a bolded paragraph reiterating the parties' mutual promise to arbitrate and to forfeit their rights to a trial by jury of any claim against each other. The Agreement further states:

> This is the entire agreement between the Company and the Employee regarding dispute resolution, the length of my employment, and the reasons for termination of employment; and this agreement supersedes any and all prior agreements regarding these issues.
>
> It is further agreed and understood that any agreement contrary to the foregoing must be entered into, in writing . . . . Oral representations made before or after you are hired do not alter this Agreement.

---

[2] The court further notes that the Agreement contains a severability clause indicating that the parties intended that, if any portion of the agreement be held unenforceable, it should be severed and the remainder of the Agreement shall be held enforceable. (Docket No. 9, Ex. 1.)

(Docket No. 9, Ex. 1.) The plaintiff appears to argue in his supplemental brief that the entire agreement between the parties should be rendered void and unenforceable as a procedurally unconscionable adhesion contract. *See Walker*, 289 F. Supp. 2d at 933-34. The plaintiff appears to state that he read the Agreement before signing it, but, despite its clearly marked bolded paragraph with respect to the waiver of jury trial, the plaintiff did not "understand" that waiver. Conversely, the defendant suggests that, in all likelihood, the plaintiff signed the Agreement but did not read it.

It is well settled that a party is presumed to know the contents of a contract he has signed. *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993). Tennessee courts have stated that, "to allow a party to admit he signed a contract, but deny it expresses the agreement he made, or to allow him to admit he signed it but did not read it or know its stipulations 'would absolutely destroy the value of all contracts.'" *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 359 (Tenn. Ct. App. 2001) (quoting *Giles*, 871 S.W.2d at 157). As the defendant notes, the plaintiff has not denied signing the Agreement, which contains clearly marked, bold letters explaining that parties who sign the Agreement are giving up their right to a trial by jury. Thus, the court concludes that the plaintiff was sufficiently informed of the waiver of his right to a jury trial.

The plaintiff, who appears to be primarily concerned with the cost implications of the Agreement, has not made any additional arguments with respect to the unenforceability of his general agreement to arbitrate disputes with Trinity. Accordingly, the court concludes that, with the exception of the Remainder, the parties' Agreement is valid and enforceable.

**III.     Housekeeping Matters**

For the reasons discussed herein, the court will deny the defendant's Motion to Dismiss or, Alternatively, to Transfer this action to the Central District of California. In the interest of expediency, the court will identify two housekeeping matters for the parties' attention as the case moves forward.

### A. Procedural Matters

The court recognizes that certain procedural requirements must be met if the parties desire to proceed with arbitration within this district. Currently, there is no motion to compel arbitration pending before the court. Unless a party files a motion to that effect, the court cannot compel the parties to arbitrate the plaintiff's claim. 9 U.S.C. § 4.

Second, pursuant to Section 3 of the FAA, if arbitration were to occur, this court is empowered to, upon application of one of the parties, stay the trial of this action until such arbitration has occurred. *Id.* § 3. At this time, because no application for stay is pending, the court will take no further action.

### B. Appropriate Locus of Arbitration

The Agreement is silent with respect to the location of the arbitration to take place.[3] Accordingly, the court concludes that, if a party were to file a motion to compel arbitration, the FAA would require that the arbitration be ordered to proceed within this district, where the plaintiff resides and a substantial part (if not all) of the events giving rise to the plaintiff's claim occurred. *See Jain v. Courier de Mere*, 51 F.3d 686, 690 (7th Cir. 1995) (where arbitration agreement does not provide for location, Section 4 of the FAA would supplement Section 206

---

[3] Even if the court did not sever the Remainder as unenforceable, the court concludes that the Agreement is ambiguous with respect to the issue of where the arbitration would take place. Consequently, it is appropriate that, if a party files a motion to compel, arbitration should proceed within this district.

giving court ability to compel arbitration in its own district); *see also Answers in Genesis of Ky. Inc. v. Creation Ministries Int'l, Ltd.*, No. 2008-53, 2008 WL 5657681, at *1 (E.D. Ky. Aug 3, 2008); *aff'd*, 556 F.3d 459 (6th Cir. 2009).

## **CONCLUSION**

For these reasons, the court will deny the defendant's Motion to Dismiss or, Alternatively, to Transfer (Docket No. 7). The court will further order that, if a party does not file a motion to compel arbitration and to stay these proceedings by May 26, 2015, the court will schedule an initial case management conference.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge